IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIETER H. FELTEN,                                    Case No. 6:16-cv-00768-TC

        Plaintiff,                                  FINDINGS AND
                                                     RECOMMENDATION

    v.

U.S. BANK, N.A.,

        Defendant.

_____

COFFIN, Magistrate Judge:

    Defendant U.S. Bank, N.A. (U.S. Bank), moves to dismiss plaintiff Dieter Felten's claims

against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). Def.'s Mot. to Dismiss 1. For the

reasons set forth below, defendant's Motion to Dismiss (#10) should be granted in part and

denied in part.

## BACKGROUND

    In December 2006, plaintiff executed a line of credit agreement (LOC) with defendant

with a maximum principal amount of $241,500 that was secured by a deed of trust (deed) on real

1 – FINDINGS AND RECOMMENDATION

property located in Roseburg, Oregon. Pl.'s Am. Compl. ¶ 7. On June 7, 2014, plaintiff's counsel sent a letter to defendant seeking a modification of the terms of the LOC and deed and also stating that if no modification was made, plaintiff "would likely have no choice but to default" and that "due to plaintiff's limited Social Security income, the loan was a predatory loan and never should have been made in the first place." *Id.* at ¶ 9.

On June 27, 2014, plaintiff's counsel sent another letter to defendant stating "we are hopeful that your institution will be willing to negotiate a reduced payment on this account and a fixed interest rate that would allow for a reduction of both principal and interest over the life of the loan." *Id.* at Ex. C. The letter also included a general release authorizing defendant to discuss plaintiff's loan with counsel. *Id.* The letter concluded by asking defendant to "please accept this letter as our firm's attempt to open a dialogue with [defendant] in *an effort to determine whether or not [defendant] is willing to modify the terms of this credit line*" and states that "unless [defendant] is able to modify the loan that in all probability [plaintiff] will have to default." *Id.* (emphasis supplied).

On July 15, 2014, defendant acknowledged receipt of plaintiff's June 27, 2014, letter with a letter stating that plaintiff could contact a relationship manager, as well as a mortgage assistance point (MAP) representative "for assistance, including status and other information." *Id.* at Ex. D. Defendant's letter included the contact information of the MAP department. *Id.*

On July 18, 2014, defendant responded with another letter advising plaintiff to apply for the Home Affordable Modification Program (HAMP) and provided the name and contact information of a relationship manager plaintiff could contact "'for assistance, including status and other information, as well as the steps [he] must take in order to be considered for loss mitigation options.'" *Id.* at ¶ 10 (quoting Pl.'s Am. Compl., Ex. D). The letter also included a

2 – FINDINGS AND RECOMMENDATION

HAMP application, worksheets describing "short sale" and "deed in lieu" loss mitigation options, and a "monthly household expenses" worksheet. *Id.* at Ex. E, 5-12, 15-16.

Plaintiff's counsel called the relationship manager twice in September 2014, and left voice messages both times he called, but his calls were not returned. *Id.* at ¶ 11; Def.'s Mot. to Dismiss 3. Thereafter, plaintiff's counsel sent three additional letters to defendant on November 7, 2014, June 1, 2015, and September 15, 2015, that he claims "re-emphasiz[ed] the content of the previous letters" and "request[ed] substantially the same information as requested in previous correspondence." *Id.* at ¶¶ 12-14. Plaintiff stopped making payments on the LOC late in the summer of 2015. *Id.* at ¶ 15.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters,* 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied,* 132 S.Ct. 2101 (2012). Finally, a court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

3 – FINDINGS AND RECOMMENDATION

## DISCUSSION

Plaintiff's asserts four claims for relief in his Amended Complaint: (1) violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e); (2) breach of the implied covenant of good faith and fair dealing in the LOC; (3) negligence; and (4) declaratory relief. Pl.'s Am. Compl. ¶¶ 17-38. Defendant moves the court for an order dismissing plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) and asserts that "after two rounds of pleadings, plaintiff has demonstrated that further amendment would be futile" and, therefore, argues that plaintiff's Amended Complaint should be dismissed with prejudice. Def.'s Mot. to Dismiss 5.

### I.    RESPA Claim

Plaintiff argues that defendant violated RESPA by failing to respond in "a legally sufficient manner" within 30 days, to four qualified written requests (QWR's) it sent on June 27, 2014; November 7, 2014; July 1, 2015; and September 15, 2015; that sought "information [regarding] the servicing of the loan." Pl.'s Am. Compl. ¶¶ 19-21.

Defendant argues that plaintiff's RESPA claim should be dismissed with prejudice because: (A) the letters it received from plaintiff's counsel were not QWR's as required by RESPA; (B) it responded to plaintiff's counsel's June 27, 2014, letter within 30 days of receipt; and (C) plaintiff has failed to allege facts that would establish that he suffered actual damages as the result of any alleged RESPA violation. Def.'s Mot. to Dismiss 5.

### A.    QWR

Plaintiff argues that his "counsel sent numerous letters to [defendant] asking for information regarding his monthly payments (including information regarding whether a non-HAMP modification of his monthly payments would be possible) and [he] never received a written response that addressed those payments." Pl.'s Obj. to Def.'s Mot. to Dismiss 2.

Plaintiff asserts that "although [his] goal may have been stated in terms of him seeking a modification," the letters he sent defendant were nevertheless valid QWR's that defendant was obligated to respond to under RESPA. *Id.* at 4.

Plaintiff's November 7, 2014, letter states, in pertinent part, that "our office represents [plaintiff] regarding his *efforts to have [defendant] modify his loan agreement.*" *Id.* at Ex. F (emphasis supplied). The letter also states that "[plaintiff] had to rent out his home in effort to generate sufficient income to enable him to pay the payments" and "*we are therefore inquiring whether or not [defendant] would be willing to negotiate a modification of [plaintiff's] loan* by *changing the interest rates and the terms* so that he may be able to afford to again reside in his home." *Id.* (emphasis supplied). The letter concludes by stating that "we would suggest converting this loan to a fully amortized 30 year mortgage at a lower interest rate and payment." *Id.*

Plaintiff's June 1, 2015, letter states, in pertinent part, that "this office has been retained by [plaintiff] *for the purpose of renegotiating the above home equity line of credit.*" *Id.* at Ex. G (emphasis supplied). The letter further states that "[plaintiff] believes that he will soon be forced to default if the terms of the loan are not modified." *Id.* "I originally sent a letter on June 27, 2014, . . . *seeking to renegotiate the loan* and [defendant] sent a form letter in response, dated July 18, 2014, simply suggesting that [plaintiff] apply for [HAMP]." *Id.* (emphasis supplied). "[Plaintiff] has previously attempted to refinance under HAMP and has been denied, and . . . it appears that he would still be ineligible. The form letter also identified a relationship manager named Jovan Bibbs with whom . . . I attempted to contact by telephone on two occasions . . . and left a message on both occasions." *Id.* "No response was ever received by this office." *Id.* "It is critical that a U.S. Bank representative *contact this office to discuss modifications to [plaintiff's]*

5 – FINDINGS AND RECOMMENDATION

*loan* that will allow him to continue to make payments, such as by converting the loan to a fully amortized 30 year mortgage." *Id.* (emphasis supplied). "This loan appears to be a predatory loan and [plaintiff] questions why the loan was ever made in the first place." *Id.* It is in the best interest of both [defendant] and [plaintiff] that *the loan be modified* so that [plaintiff] can continue making payments and so that both parties can avoid the time and expense of a contested foreclosure." *Id.* (emphasis supplied).

Plaintiff's final letter sent on September 15, 2015, states, in pertinent part, that "[plaintiff] attempted on multiple occasions to refinance this loan through [defendant] before retaining me to assist." *Id.* at Ex. H. "I originally sent a letter on June 27, 2014 . . . *seeking to negotiate the loan*, and [defendant] sent a form letter in response, dated July 18, 2014, simply suggesting that [plaintiff] apply for [HAMP]." *Id.* (emphasis supplied). "Plaintiff has previously attempted to refinance under HAMP and has been denied, and . . . it appears that he would still be ineligible." *Id.* "The form letter also identified a relationship manager named Jovan Bibbs with whom [plaintiff] could discuss his loan. I attempted to contact Mr. Bibbs by telephone on two occasions . . . and left messages on both occasions, [but] . . . no response was ever received by this office." *Id.* "On June 1, 2015, I again sent a letter to [defendant] attempting to open a line of communication between [defendant] and this office, and this attempt was again ignored. All our office received was another HAMP form letter." *Id.* "My associate attorney . . . made several attempts to communicate with [defendant] via telephone, and he was informed that [plaintiff] essentially had no options other than the HAMP application which [plaintiff] knows to be futile." *Id.* "Further, I am informed that a U.S. Bank representative told [my associate] that there was no way to negotiate with an attorney unless and until [defendant] elects to foreclose on the property." *Id.* [Plaintiff] was left with no choice other than to cease payment and wait for

6 – FINDINGS AND RECOMMENDATION

[defendant] to foreclose." *Id.* "It appears that there is no other avenue for opening a line of communication with a U.S. Bank representative . . . who would have the authority to enter into meaningful negotiations." *Id.*

"RESPA provides that mortgage loan servicers must respond in writing to [QWR's] by borrowers for information relating to the servicing of their loans*."* *Moore v. Wells Fargo Bank, N.A.*, 2013 WL 3965313, *6 (D.Or. Aug. 1, 2013) (citing 12 U.S.C. § 2605(e)).  Because "RESPA governs the servicing of the loan, rather than the creation or modification of the loan . . . a QWR must only relate to servicing." *Vettrus v. Bank of America*, N.A., 2012 WL 2905167, * 7 (D.Or. July 13, 2012) (internal quotations omitted).  "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).  A QWR is "a written correspondence," which allows the servicer to identify the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Hubbard v. Bank of America,* 2011 WL 2470021, *4 (D.Or. April 21, 2011) (quoting 12 U.S.C. § 2605(e)(1)(B)).

In response to a QWR, the servicer must, within thirty days, provide the borrower with a written explanation or clarification that includes:

(i)    Information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii)   The name and telephone number of an individual employed by the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(C).  Failure to comply with § 2605 will result in the servicer being liable to the borrower for "any actual damages to the borrower as a result of the failure," as wells as

additional damages if there is a pattern or practice of non-compliance with the requirements of RESPA. 12 U.S.C. § 2605(f)(1).

Here, plaintiff contends that he sent four letters and made numerous phone calls seeking information relating to the servicing of his loan. To the extent plaintiff relies on his phone calls to constitute valid QWR's for purposes of establishing his RESPA claim, his reliance on those calls is misplaced because QWR's can only come from written correspondence. 12 U.S.C. 2605(e)(1)(B) ("For purposes of this subsection, a [QWR] shall be a written correspondence."). Additionally, to the extent plaintiff relies on the four letters he sent to defendant for the proposition that they presented requests for information relating to "monthly payments" or "servicing of the loan," his reliance on those letters is also misplaced for two reasons.

First, as stated above, plaintiff describes his request for "monthly payments" as a request for "information regarding whether a non-HAMP modification of his monthly payments would be possible." Because RESPA governs servicing of the loan, rather than the creation or modification of the loan, *Vettrus*, 2012 WL 2905167 at * 7, and because plaintiff admits that his requests for monthly payments sought information relating to a modification of the loan, plaintiff's requests, insofar as they seek a modification of his monthly payments, fail to constitute QWR's.

Second, although plaintiff claims that he sought "information [regarding] the servicing of the loan," inspection of the four letters plaintiff attached to his Amended Complaint as Exhibits C, F, G, and H, reveal that plaintiff's counsel never sought information regarding scheduled periodic payments pursuant to the existing terms of the loan as 12 U.S.C. § 2605(i)(3) requires. Instead, the four letters reveal that plaintiff sought information regarding loan and payment modifications. Specifically, plaintiff clearly states in each of the four letters sent to defendant

that they were "an effort to determine whether or not [defendant] is willing to modify the terms of this credit line," Pl.'s Am. Compl. at Ex. C, and sought to determine "whether or not [defendant] would be willing to negotiate a modification of [plaintiff's] loan," *id.* at Ex. F, by "enter[ing] into meaningful negotiations" *id.* at Ex. H, "for the purpose of renegotiating the above home equity line of credit," *id.* at Ex. G. Thus, it is clear that the letters were not attempts to gain information about the servicing of the existing LOC as plaintiff now argues. Accordingly, because plaintiff's allegations contradict the exhibits that are attached to the Amended Complaint, this court reject plaintiff's allegations that the letters sought information regarding payment information pursuant to the terms of the existing loan. *Lazy Y Ranch Ltd.*, 546 F.3d at 588.

Finally, to the extent plaintiff relies on his statements in the letters that the loan was "predatory" to substantiate his RESPA claim, plaintiff's reliance on those statements is also misplaced because RESPA governs only the servicing of the loan and not the creation of the loan. *Vettrus*, 2012 WL 2905167 at * 7.

As such, this court finds that none of plaintiff's correspondence, whether by phone or by letter, constitute valid QWR's as required by RESPA. Accordingly, because plaintiff already had an opportunity to file an amended complaint, this court finds that plaintiff's RESPA claim should be dismissed with prejudice.

**B. Timely Response to Plaintiff's Counsel's Letters**

As an initial matter, because none of the correspondence sent by plaintiff were valid QWR's, plaintiff's assertion that defendant violated RESPA by failing to submit a timely response to the letters should be disregarded as moot. However, assuming arguendo that the letters were valid QWR's as plaintiff asserts, defendant nevertheless satisfied any obligations it

would have had under RESPA by responding to plaintiff's first letter within 30 days with a HAMP application, information on other loss mitigation options, including short sale and deed in lieu options, and by giving the name and contact information of two bank employees that could provide plaintiff with further assistance.

Accordingly, this court finds that defendant responded adequately to plaintiff's initial letter, which, as discussed above, was not a valid QWR. Moreover, because plaintiff admits that the three additional letters it sent to defendant on November 7, 2014, June 1, 2015, and September 15, 2015, "request[ed] substantially the same information as requested in previous correspondence" and merely "re-emphasiz[ed] the content of the previous letters," Pl.'s Am Compl. at ¶¶ 12-14, this court finds that defendant's initial responses satisfied any obligation it would have had under RESPA, had valid QWR's been made by plaintiff. 12 C.F.R. 1024.36(f)(1)(i) (stating that servicers need not respond to subsequent QWR's if the information requested in later submitted QWR's "is substantially the same as information previously requested by the borrower" if the servicer satisfied its response obligations with respect to the initial QWR.). As such, this court finds that defendant's motion to dismiss plaintiff's RESPA claim should be granted for the additional reason that defendant satisfied its response obligations with respect to plaintiff's inquiries.

### C. Facts Establishing Actual Damages

Plaintiff asserts that "[a]s a result of [defendant's] failure to respond to [his QWR, he] has been damaged in an amount not less than $48,000." Pl.'s Am. Compl. ¶ 21. Plaintiff does not allege in the Amended Complaint how the damages he allegedly sustained equate to $48,000. However, plaintiff does assert in his Objection to Defendant's Motion that "had [he] been provided with a straightforward, authoritative answer at the outset informing him that no non-

HAMP modification would be agreed to, [he] could have explored his other options . . . [such as the] sale of the property or loss mitigation options." Pl.'s Obj. to Def.'s Mot. to Dismiss. 5.

"Under RESPA, loan servicers are liable to borrowers for 'any actual damages' resulting from their failure to comply with the response requirements." *Zeich v. Select Portfolio Servicing, Inc.,* 2015 WL 10353128 at \*2 (D.Or. Oct. 30, 2015) (quoting 12 U.S.C. § 2605(f)(1)(A). "'Actual damages' mean pecuniary damages proximately caused by 'the RESPA violation itself.'" *Id.* (quoting *Subramaniam v. Beal,* 2013 WL 5462339, \*7 (D.Or. Sept. 27, 2013)).

Here, defendant responded to plaintiff's initial non-QWR inquiry within 30 days with a HAMP application, other loss mitigation options, including short sale and deed in lieu information, and the contact information of two bank employees that plaintiff could contact for further assistance. Moreover, plaintiff admits that he "was unable to afford to continue to make payments under the terms of the [LOC and deed], and ceased making payments in late summer of 2015." Accordingly, plaintiff's alleged damages appear to be the result of his own failure to perform under the LOC and not the result of defendant's failure to provide information relating to the servicing of the loan as RESPA requires. As such, this court finds that defendant's motion to dismiss plaintiff's RESPA claim should be granted for the additional reason that plaintiff has failed to allege facts establishing that a RESPA violation was the proximate cause of any damages he allegedly sustained.

**D. Exercise of Supplemental Jurisdiction Over Plaintiff's Remaining Three Claims**

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-

11 – FINDINGS AND RECOMMENDATION

law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.,* 235 F.3d 553, 557 (10th Cir. 2000).

"In particular, when federal law claims are 'eliminated at an early stage of the litigation, the district court [has] a powerful reason to choose not to continue to exercise jurisdiction.'" *Aloha Dog and Cat Hosp., P.C. v. Standard Retirement Services, Inc.,* 2011 WL 2470104 at * 2 (quoting *Carnegie Mellon Univ.,* 484 U.S. at 351). "By contrast, dismissing a state law claim may be an abuse of discretion when that claim has proceeded in federal court for a long period and the parties are 'essentially done with trial preparation.'" *Id.* (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint, Inc.,* 333 F.3d 923, 926 (9th Cir. 2003) (dismissal of state law claim a year after the court granted leave to add it and seven days before trial was unfair to the parties and an inefficient use of judicial resources.)).

Here, plaintiff's RESPA claim was the only federal claim in this case and plaintiff has not pled facts sufficient to establish diversity jurisdiction. Moreover, plaintiff's RESPA claim has been eliminated at an early stage of the litigation and the parties do not assert that they are "essentially done with trial preparation." Accordingly, this court finds that the values of economy, convenience, fairness, and comity do not support exercising supplemental jurisdiction over plaintiff's breach of contract, negligence, and declaratory relief claims. As such, this court declines exercising supplemental jurisdiction over plaintiff's remaining three state law claims.

///

## CONCLUSION

For the reasons stated, defendant's Motion to Dismiss (#10) plaintiff's Amended Complaint with prejudice should be granted in part and denied in part. Specifically, defendant's motion, insofar as it seeks dismissal of plaintiff's first claim under RESPA with prejudice, should be granted. However, because plaintiff's RESPA claim was the only federal claim in this case, plaintiff has not pled facts sufficient to establish diversity jurisdiction, and the values of economy, convenience, fairness, and comity do not support exercising supplemental jurisdiction over plaintiff's breach of contract, negligence, and declaratory relief claims, this court declines exercising supplemental jurisdiction over plaintiff's remaining state law claims. As such, this court recommends that this case be remanded back to the Douglas County Circuit Court after plaintiff's RESPA claim is dismissed with prejudice and defendant's motion, insofar as it seeks the dismissal of plaintiff's remaining three state law claims, is denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 25 day of August 2016.

THOMAS M. COFFIN
United States Magistrate Judge

13 – FINDINGS AND RECOMMENDATION